**Doyle EDWARDS, Plaintiff,**

**v.**

**Ronald R. HARE, et al., Defendants.**

**No. 85–C–0947 A.**

United States District Court,
D. Utah, C.D.

March 29, 1988.

Sue Vogel, Michael O'Brien, Kevin M. Rowe, Salt Lake City, Utah, for plaintiff.

T.J. Tsakalos, Salt Lake City, Utah, for defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY AND FOR SANCTIONS

ALDON J. ANDERSON, Senior District Judge.

Doyle Edwards was arrested on September 16, 1982 for driving under the influence, driving with an expired registration, and driving on a revoked license. Mr. Edwards claims that the events following his arrest resulted in the defendants violating his civil rights and he brought this § 1983 action. 42 U.S.C.A. § 1983 (West 1981). This Court's jurisdiction is properly invoked as a federal question involving a § 1983 suit. 28 U.S.C.A. § 1331 (West 1966); 28 U.S.C.A. § 1343(a)(3) (West Supp.1987). In addition, the Court has pendent jurisdiction over the plaintiff's state law claims.

The matter is currently before the Court on defendants' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The plaintiff has filed a motion for partial summary judgment, and a Rule 11 motion for sanctions. Two hearings have been held, one on December 22, 1987 and the other January 4, 1988. Based on the files, records, and proceedings, the Court denies plaintiff's motions and grants defendants' motion.

## I. Facts[1]

On September 16, 1982, Doyle Edwards was arrested for driving under the influence, driving with an expired registration, and driving on a revoked license. Several days later he was released on bail. On October 12, 1982, Mr. Edwards appeared before the Honorable Ronald R. Hare, Fillmore City justice of the peace, and entered a plea of not guilty. Judge Hare determined that Mr. Edwards was indigent and appointed Dexter Anderson as court appointed counsel.

While out on bail and awaiting trial Mr. Edwards was arrested on December 9, 1982 for driving a backhoe under the influence and driving on a revoked license. He was taken to the Sevier County jail where he was held until his January 12, 1983 court appearance on the September charges. Meanwhile, on January 1, 1983, Dexter Anderson, Mr. Edwards' court appointed counsel, was named Deputy County Attorney for Millard County.

On January 12, 1983, Mr. Edwards appeared before Judge Hare on both the September and December charges. Because of the conflict in interest created by his appointment as deputy county attorney, Mr. Anderson had withdrawn from the case and no new counsel had been appointed. At the beginning of the hearing, city prosecutor Dave Maddox offered to drop two of the charges if Mr. Edwards would plead

---

1. Plaintiff's Amended Complaint, Vol. 1, p. 2 (filed Sept. 5, 1985).

guilty to two others.[2] Later, Mr. Edwards agreed to the plea bargain, without the benefit of counsel. He was sentenced to six months on each charge, to be served consecutively. Mr. Edwards served eight months of his sentence and then he was released on a writ of habeas corpus.

On September 5, 1985, Mr. Edwards filed this suit, under 42 U.S.C.A. §§ 1983 and 1986, alleging that the defendants violated his civil rights. 42 U.S.C.A. § 1986 (1981). He claims that the defendants deprived him of his right to counsel, under the sixth and fourteenth amendments, and his right to a reasonable bail, under the eighth and fourteenth amendments. Mr. Edwards also claims his rights to due process, to counsel, and to reasonable bail, as secured by Utah law, were violated. Utah Code Ann. §§ 77–35–8 and 77–35–11 (Supp.1987), and Article I §§ 8 and 9 of the Utah Constitution.

■ Mr. Edwards originally sought declaratory, and injunctive relief as well as monetary damages. At a hearing held on January 4, 1988, he agreed to dismiss the declaratory and injunctive claims if defendant Ronald R. Hare would permanently recuse himself from all cases involving the plaintiff. In an affidavit filed with the Court, Vol. 2, p. 70 (filed April 30, 1987), Judge Hare stated:

> In connection with my duties as Justice of the Peace, I personally review any criminal informations filed or any citations issued relating to any criminal defendant within my precinct and automatically recuse myself from any cases involving the plaintiff or his former wife. I have also ordered my clerk to transfer any cases involving the plaintiff or his former wife.

Based on this language the Court finds that Judge Hare has permanently recused himself from cases involving the plaintiff and dismisses the claims for declaratory and injunctive relief.

Mr. Edwards originally filed suit against Millard County and the Millard County

Commissioners. These were dismissed without prejudice and by stipulation on October 24, 1986. Order of Dismissal, vol. 2, p. 42 (filed Oct. 24, 1986). In addition, Warren Peterson, the Fillmore City prosecutor was originally a defendant. At the hearing held on January 4, 1988, the plaintiff moved to dismiss Mr. Peterson from the suit and the Court so ordered. Minute Entry, vol. 3, p. 98 (filed Jan. 4, 1988).

There is left before the Court a claim for money damages against Fillmore City; Fillmore City Mayor Doris Rasmussen; Fillmore City Commissioners Terry Scottern, Jerry Brinkerhoff, Brent Jackson, Dallin Nelson, Sr., and Freeman Rowley; Fillmore City Administrator Dwight Day; and Fillmore City Justice of the Peace Ronald R. Hare.

## II. *Discussion*

Defendants and plaintiff are before the Court seeking respectively, summary judgment and partial summary judgment. In a summary judgment motion, the movant is entitled to summary judgment only if no genuine issue exists as to any material fact. Fed.R.Civ.P. 56. Recently, the Supreme Court used this practical language in giving the essential inquiry in a summary judgment motion: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### A. Plaintiff's Claim under 42 U.S.C.A. § 1983

#### 1. Judge Ronald R. Hare

Mr. Edwards claims, and for purposes of the motion the defendants do not dispute,[3] that he first learned of his court appointed attorney's withdrawal from the case on January 12, 1983, the day of the trial. He asked Judge Hare to appoint new counsel

---

**2.** Mr. Edwards pleaded guilty to the charges of driving under the influence and to driving on a revoked license. The record does not reflect what the dropped charges were. Defendants' Memorandum in Support of Their Motion for

Summary Judgment, Vol. 2, p. 69 (filed April 30, 1987).

**3.** Facts taken from Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, vol. 3, p. 78 (filed May 18, 1987).

and Judge Hare sent Prosecutor Dave Maddox out into the hall to look for an attorney. When none was found, Judge Hare sent Mr. Edwards into a room with a phone so that Mr. Edwards could locate counsel on his own. He was unsuccessful. He then asked Judge Hare if the trial could be continued until counsel could be found and if bail could be set. Judge Hare told Mr. Edwards that bail could be set at an amount between $1 million to $3 million. Seeing his efforts to obtain counsel were futile, Mr. Edwards accepted the plea bargain and pleaded guilty. Based on Judge Hare's setting excessive bail and failure to obtain counsel, Mr. Edwards argues that Judge Hare is liable under 42 U.S.C.A. § 1983.

Mr. Edwards argues that this liability exists in spite of the doctrine of judicial immunity. His theory is that under the circumstances the act of obtaining counsel was not judicial, because Utah law has now placed that responsibility on the counties, cities, or municipalities. And, the mechanics of obtaining counsel, as opposed to appointing counsel, is not judicial but rather administrative.

■ Absolute judicial immunity shields a judge from money damages in a 42 U.S.C.A. § 1983 civil rights suit. *Pierson v. Ray*, 386 U.S. 547, 554–555, 87 S.Ct. 1213, 1217–1218, 18 L.Ed.2d 288 (1967). This immunity applies if 1) the judge has subject matter jurisdiction over the case, and 2) the acts allegedly causing the constitutional violation are judicial. *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978); *Van Sickle v. Holloway*, 791 F.2d 1431, 1435 (10th Cir.1986). An act is judicial if it is one normally performed by a judge and the parties dealt with the judge in his or her judicial capacity. *Stump* 435 U.S. at 362, 98 S.Ct. at 1107–08.[4]

■ Here, Mr. Edwards does not claim that Judge Hare lacked subject matter jurisdiction over his case. In fact, Judge Hare, as Fillmore City justice of the peace, surely had jurisdiction to hear cases of driving under the influence and driving on a revoked license like that brought against Mr. Edwards. Furthermore, it is clear that Mr. Edwards dealt with Judge Hare in his judicial capacity. There is no indication that at the time of the hearing either Mr. Edwards or the prosecutor viewed Judge Hare's role in conducting the hearing and in responding to the request for counsel and bail as anything but judicial.

As to the setting of bail, Mr. Edwards does not dispute that this is a judicial act. Case law makes clear that the setting of bail is a judicial function. *United States v. Abrahams*, 604 F.2d 386, 393 (5th Cir.1979) ("Bail may be set only by a judicial officer. The determination of bail requires a judicial decision...."); *Grundstrom v. Darnell*, 531 F.2d 272, 273 (5th Cir.1976) ("As to denial of the right to bail prior to trial ... Justice of the Peace Biggs ... is cloaked with immunity as a judicial officer."); *Jacobson v. Schaefer*, 441 F.2d 127, 130 (7th Cir.1971) (County judge immune from liability under Civil Rights Act for alleged deprivation of plaintiff's constitutional right to bail.). Furthermore, Utah law affirms the responsibility for bail as being judicial.[5] Accordingly, since the setting of bail is a judicial act, the Court finds that Judge Hare is absolutely immune from damages under § 1983 for any alleged violation of Mr. Edwards' right to bail.

The appointment of counsel is also an inherently judicial act. *Birch v. Mazander* 678 F.2d 754, 756 (8th Cir.1982) ("[T]he acts complained of consist of the acceptance of a plea and the appointment of counsel. Clearly, these are functions normally performed by a judge."); *Lewis v. County of*

---

4. A judicial act does not depend upon a formal setting to make it judicial. "Thus, for example, the informal and *ex parte* nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." *Forrester v. White*, ⸺ U.S. ⸺, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988).

5. *Issuance of order admitting to bail and fixing an amount.* The order admitting to bail and fixing the amount thereof may be issued by a magistrate having jurisdiction over the person arrested or jurisdiction over the trial of the offense committed, or by any person authorized in writing by the magistrate pending an appearance before a magistrate. Utah Code Ann. § 77–20–2 (1982).

*Lehigh,* 516 F.Supp. 1369, 1370–71 (E.D.Pa. 1981) ("The judges' involvement ... constitutes solely the exercise of their judicial functions—appointing attorneys to represent indigent defendants...."); *Washington County v. Day,* 22 Utah 2d 6, 10, 447 P.2d 189, 191 (Utah 1968) ("[T]he courts through their inherent power ... have always zealously watched over the rights of impecunious defendants and required counsel to give of their time and money to see that a proper representation was made."). Even the words "court appointed attorney" indicate that this is a function performed by the court and is judicial.

Mr. Edwards' theory, however, is that Utah statutes make appointment of counsel an administrative act. He claims that § 77–32–1 of the Utah Code places the duty of providing representation for indigent defendants directly on the cities and by implication removes it from the judiciary. Under § 77–32–6, the city can meet this responsibility by authorizing the court to appoint counsel.[6] Mr. Edwards argues that since appointment of counsel is primarily the city's responsibility, the act is administrative, not judicial.[7]

Section 77–32–1 of the Utah Code provides in part:

*Minimum standards provided by county for defense of indigent defendants.* The following are minimum standards to be provided by each county, city and town for the defense of indigent persons in criminal cases in the courts and various administrative bodies of the state:

(1) Provide counsel for every indigent person who faces the substantial probability of the deprivation of his liberty;

....

Utah Code Ann. § 77–32–1 (1987). This language is virtually identical to the prior code provision which has been interpreted by the Utah Supreme Court.[8] In *Washington County v. Day,* 22 Utah 2d 6, 10, 447 P.2d 189, 191 (Utah 1968) the court stated that the legislature enacted this statute to "remove the burden of affording counsel for impecunious defendants in criminal cases from the tired shoulders of the legal profession and [place] it upon society, where it has always rightfully belonged." Since the court already had power to appoint counsel this statute deals primarily, as the Utah Supreme Court points out, with the city's responsibility to have a plan for the payment of counsel.

Furthermore, the placement of § 77–32–1 in the Utah Code indicates that it is not a statute designed to change the inherently judicial act of appointing counsel. The statute is found in Title 77, the Code of Criminal Procedure. It is not found in Title 78, the Judicial Code. Had the legislature intended to change the courts' power to appoint counsel and place it in the hands of the counties, cities, and municipalities, it would have specified in the Judicial Code

---

**6.** Utah Code Ann. § 77–32–6 (1982) provides:

*Governing bodies of counties or municipalities to appoint counsel or provide through legal aid associations.* Governing bodies of counties, cities and towns shall either:

(1) Authorize the court to provide the services prescribed by this chapter by appointing a qualified attorney in each case and awarding him reasonable compensation and expenses to be paid by the appropriate governing body; or

(2) Arrange to provide those services through non-profit legal aid or other associations.

**7.** The Supreme Court most recently addressed judicial immunity in *Forrester v. White,* — U.S. ——, 108 S.Ct. 538, 544–46, 98 L.Ed.2d 555 (1988). In that case the Court, in a unanimous ruling, distinguished between actions that are "truly judicial" in nature and those that take on

an administrative character, such as decisions to demote or discharge employees. In the former, the judge is absolutely immune. In the latter, the judge retains only a qualified immunity.

**8.** The pertinent portion of the former code provision reads:

Section 1. The Legislature of the State of Utah hereby declares the following to be minimum standards to be provided by each county for the defense of defendants who are financially unable to obtain an adequate defense in criminal cases in the courts and various administrative bodies of the State of Utah:

(1) Provide counsel for every indigent person unable to employ counsel who faces the possibility of the deprivation of his liberty or other serious criminal sanction.

As quoted in *Washington County v. Day,* 22 Utah 2d 6, 8, 447 P.2d 189, 190 (Utah 1968).

that the power had been withdrawn or that the duties were to be conducted differently. Consequently, Utah law does not change the judicial nature of appointing counsel into an administrative function.

Finally, Mr. Edwards argues that the mechanics of obtaining counsel is administrative. He distinguishes between the judicial act of determining that this particular defendant has the right to court-appointed counsel, and the act of contacting an attorney and asking him or her to represent the defendant. Mr. Edwards argues that the process of connecting the indigent criminal defendant with a court-appointed attorney is administrative.

■ In a matter so fundamental as the indigent's right to appointed counsel in a criminal case, the court has the inherent power to do whatever is reasonably necessary to protect the right. Whatever a judge must do in carrying out the power to appoint counsel and set bail, including the mechanics of obtaining counsel, whether from a qualified list or special appointment by the judge or the decision not to appoint, is judicial. In this case the court attempted to locate counsel, was unable to and finally made the decision to accept Mr. Edwards' plea without his having counsel. Consequently, the Court finds that what the court did in this case was judicial and any purported failure to carry out a responsibility to obtain counsel and set appropriate bail was protected by absolute immunity. Defendants' motion for summary judgment as to the issue of Judge Hare's liability is granted.

### 2. Fillmore City and Fillmore City Employees

In the claims against the city, not only do the defendants seek summary judgment, but Mr. Edwards also seeks summary judgment. His motion requests an order that if Judge Hare's acts can be proved at trial to be constitutional violations of Mr. Edwards' rights, then, regardless of whether or not Judge Hare is immune, the city and city employees remain liable. This theory of liability is based on the claim that the city delegated to Judge Hare final policy-mak-

ing authority for appointment of counsel and that Judge Hare acted unconstitutionally, pursuant to that authority.

■ The U.S. Supreme Court has held that municipalities are "persons" within the meaning of 42 U.S.C.A. § 1983 and therefore can be sued for constitutional violations. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). However, even though a constitutional violation may occur through the acts of city employees, city liability cannot be based upon the doctrine of respondeat superior. *Id.* at 691, 98 S.Ct. at 2036; *Wise v. Bravo,* 666 F.2d 1328, 1335 (10th Cir.1981). "[M]unicipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati,* 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298, 89 L.Ed. 2d 452 (1985); *Meade v. Grubbs,* 841 F.2d 1512 (10th Cir.1988) (WESTLAW, Allfeds library, CTA 10 file).

Courts have struggled to determine when a city is actually responsible for a constitutional deprivation. In *Monell,* the Supreme Court stated that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" the city is responsible. *Monell* 436 U.S. at 694, 98 S.Ct. at 2037; *McKay v. Hammock,* 730 F.2d 1367, 1374–75 (10th Cir.1984) (en banc). Later, the Court found that a single decision, violating constitutional rights and made by a city official given authority for setting policy in that area, results in government policy and could create liability. *City of St. Louis v. Praprotnik,* —— U.S. ——, ——, 108 S.Ct. 915, 922–24, 99 L.Ed.2d 107 (1988); *Lusby v. T.G. & Y. Stores, Inc.,* 796 F.2d 1307, 1312 n. 5 (10th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 275, 93 L.Ed.2d 251 (1986).

■ Clearly, then, a city cannot be held liable for an area over which it has no responsibility. In this case, Mr. Edwards asserts that Fillmore is liable for the constitutional violations of his right to bail and to appointed counsel. Yet, as this Court has

pointed out above, these areas are not within the city's responsibility. As already discussed, Utah law provides for the setting of bail by a magistrate or someone specifically appointed by the magistrate. It is a judicial function, and not one belonging to the city. *See infra* note 1 & accompanying text. Therefore, since the city has no responsibility under Utah law for setting bail, Judge Hare's alleged violation of Mr. Edwards right to bail cannot bring liability upon Fillmore.

Appointment of counsel is also not the city's responsibility. Mr. Edwards again argues that § 77–32–1 of the Utah Code makes the cities responsible for appointment of counsel. That section states: "The following are minimum standards to be provided by each county, city and town.... (1) Provide counsel for every indigent person who faces the substantial probability of the deprivation of his liberty; ...." As stated above, this Court follows the interpretation of the Utah Supreme Court in *Washington County v. Day*, 22 Utah 2d 6, 10, 447 P.2d 189, 191 (Utah 1968), in viewing this statute as authorizing payment of appointed counsel. Certainly the city does not have responsibility for determining "probability of the deprivation of his liberty." Only the judge would know this. The statute simply sets out the circumstances in which the city would be responsible for the payment of counsel. "Provide" is a pivotal word in the statute which is defined as: "To supply; to afford; to contribute." *Black's Law Dictionary* 1102 (5th ed. 1979). It is in complying with this sense of provide, that Fillmore City contracted with three attorneys to act, *when appointed by a judge*, as public defenders, and to be paid by the city. Fillmore met its responsibility under the statute. Appointment of counsel was not its duty; appointment of counsel is a judicial function, therefore, Judge Hare's alleged failure to obtain counsel for Mr. Edwards cannot bring municipal liability upon Fillmore City.

■ Furthermore, even if this Court were to hold that § 77–32–1 placed responsibility upon Fillmore City for appointment of counsel, Mr. Edwards' argument would still fail. In *City of St. Louis v. Praprotnik*, the Supreme Court affirmed that when an official's discretionary decisions are "constrained by policies not of that official's making, those policies, rather than the subordinate's departure from them, are the act of the municipality." —— U.S. at ——, 108 S.Ct. at 926. Assuming that Fillmore City did have responsibility for appointment of counsel and that it delegated that responsibility to Judge Hare, Judge Hare's acts would be constrained by the policy delineated in the statute. The statutory policy requires counsel to be provided for "every indigent person who faces the substantial probability of the deprivation of his liberty." Judge Hare's alleged departure from this policy does not establish new city policy. At best, under Mr. Edwards' theory, Judge Hare would have authority to determine how to effectuate the policy in the statute, rather than to establish it. That he may have used that authority unconstitutionally does not render the city liable. —— U.S. at —— – ——, 108 S.Ct. at 932–34 (Brennan, J., concurring). Fillmore City is not liable for Judge Hare's acts; the plaintiff's motion for partial summary judgment is denied.

### B. Plaintiff's Claims Under 42 U.S.C.A. § 1986

The Court observes that Mr. Edwards also claims constitutional deprivation under 42 U.S.C.A. § 1986. This claim is made in the Amended Complaint, but is not mentioned elsewhere in any of the pleadings or briefs filed with the Court. Recovery under § 1986 depends upon the existence of a claim under § 1985 which Mr. Edwards does not raise, nor does he allege facts that would support a claim under § 1985. Therefore, the defendants' motion for summary judgment on the 42 U.S.C.A. § 1986 claim is granted.

### C. Plaintiff's Claims Under Utah State Law

Mr. Edwards claims that the defendants have violated state law in depriving him of his rights to due process, to counsel, and to due process. He cites Utah law generally

and also Utah Code Ann. §§ 77–35–8 and 77–35–11.

█ The decision to hear a state claim in a federal court is discretionary with the court. *United Mine Workers v. Gibb*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed. 2d 218 (1966) ("... pendent jurisdiction is a doctrine of discretion, not of plaintiff's right...."). The U.S. Supreme Court has stated that "if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Id.* Under the circumstances here, where Mr. Edwards' federal claims are dismissed through a summary judgment motion, and dismissing the state claims would not result in waste, the Court dismisses without prejudice, the state law claims. *Atkinson v. City of Fort Collins, Colo.*, 583 F.Supp. 567, 570 (D.Colo 1984) ("Having found plaintiffs' § 1983 claims to be without basis, there is no sound reason ... to accept pendent jurisdiction over the remaining state law claims...."); *Equity Oil Co. v. Consolidated Oil Gas, Inc.*, 596 F.Supp. 507, 514 (D.Utah 1983) ("Since this court is dismissing ... federal claims ... state common law claim should also be dismissed for lack of subject matter jurisdiction.").

D. Plaintiff's Motion for Sanctions Under Rule 11, Federal Rules of Civil Procedure

Mr. Edwards seeks sanctions against the defendants for arguments made by them in their motion for summary judgment. The defendants argued that Mr. Edwards' action was barred by the statute of limitations, and by Mr. Edwards' failure to comply with the notice provisions of Utah Code Ann. § 63–30–12 (1953), the Utah Governmental Immunity Act. The defendants also argued that a claim against Fillmore City is barred by immunity. Mr. Edwards' counsel cited to the defendants *Mismash v. Murray City*, 730 F.2d 1366 (10th Cir.1984) which holds that a § 1983 action brought in federal district court in Utah has a four year statute of limitations. Mr. Edwards' counsel also cited *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) which holds that munici-

palities have no immunity from liability for damages resulting from constitutional violations.

In response to the motion for sanctions, the defendants withdrew their statute of limitations argument. And, they clarified the immunity argument by stating that it was based upon judicial immunity and not upon municipality immunity. However, the defendants continue to argue that Mr. Edwards failed to file a notice of claim as required by the Utah Governmental Immunity Act, and therefore his § 1983 claim is barred.

Rule 11 provides that an attorney certify by signature that to the best of his or her knowledge, information, and belief formed after "reasonable inquiry," that the submitted pleading or motion is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. When Rule 11 is violated, the court, in the language of the rule, "shall" impose sanctions. *Chevron, U.S.A., Inc. v. Hand*, 763 F.2d 1184, 1187 (10th Cir.1985); *Storage Tech. Partners v. Storage Tech. Corp.*, 117 F.R.D. 675, 680 (D.Colo.1987).

█ Rule 11 sanctions are not intended to "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed.R.Civ.P. 11 advisory committee note. And therefore, in determining if sanctions are appropriate, any doubts must be resolved in favor of the party signing the pleading. *Monument Builders v. American Cemetery Ass'n*, 629 F.Supp. 1002, 1011 (D.Kan.1986). Accordingly, this Court does not believe that the defendants have violated the Rule. Section 1983 cases are difficult and the law is in a state of flux as evidenced by the creative arguments put forth by Mr. Edwards and his counsel. The defendants have withdrawn their statute of limitations and city immunity arguments. It is true that defendants' counsel did inadequate research in arguing that a federal claim may be barred by failure to meet state statutory requirements, such as the "notice of claim" requirement in the Utah Governmental Immunity Act. However, plaintiff's claims have also been found to be beyond the mark. Further-

more, the point is of lesser significance, in view of the fact that plaintiff has not been vindicated. The Court believes the circumstances are not sufficient to justify the imposition of sanctions.

### III. *Conclusion*

Mr. Edwards' claims against defendant Judge Hare for the alleged violations of his right to bail and his right to counsel fail because those acts are judicial and Judge Hare is absolutely immune. Mr. Edwards' claims against defendants Fillmore City and Fillmore City employees fail because the city is not responsible for those alleged violations. Fillmore City does not have authority over the setting of bail nor over the appointment of counsel. Therefore, the city could not be responsible.

### IV. *Order*

IT IS HEREBY ORDERED, for the reasons previously stated, that the defendants' motion for summary judgment is granted. The plaintiff's motions for partial summary judgment and for sanctions are denied. The plaintiff's state law claims are dismissed without prejudice.