**James E.M. SPENCER, Plaintiff,**

v.

**Sheriff Royce L. RHODES, et al., Defendants.**

**No. 86–1258–CRT.**

United States District Court,
E.D. North Carolina,
Raleigh Division.

March 19, 1987.

James E.M. Spencer, pro se.

Lacy H. Thornburg, Atty. Gen., State of N.C. Raleigh, N.C., for defendants.

## ORDER

LARKINS, Senior District Judge:

This Plaintiff filed this action under 42 U.S.C. § 1983 while incarcerated at the Central Prison in Raleigh, North Carolina. He has requested, and has been granted, leave to proceed in forma pauperis. His original complaint was a morass of "legal" conclusions with virtually no factual support. This court, by Order filed January 9, 1987, instructed this Plaintiff that he must assert more than conclusions and must, consistent with Rule 8 of the Federal Rules of Civil Procedure, make a "short and plain" statement of facts that would support what he believed to be his legal claim. The Plaintiff has not complied; he has simply added length to his complaint. The added length, however, is length without substance. Throughout his "supplemental complaint," Mr. Spencer repeats constantly that his rights have been violated and that the defendants have acted illegally, but he fails to explain to this court how this is so.

This court, in its above mentioned January 9, 1987 filing, "ORDERED [the Plaintiff] to AMEND his complaint to convey a concise statement of the constitutional impingements he has allegedly been made to suffer." This court warned that if he did not, his action would be dismissed. Because the Plaintiff has disregarded this court's order to amend his complaint with a concise statement, the court is justified in dismissing his complaint. In addition, dismissal here is warranted for another reason.

The procedure to be utilized in suits brought in forma pauperis is governed by 28 U.S.C. § 1915. According to subsection (d) of that section, the court "may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d).

The increasing popularity of in forma pauperis suits by prison inmates has fostered an increasing number of dismissals of idle hands litigation by the judicial employment of § 1915(d). The most frequent use of this section is for the dismissal of suits that are labeled "frivolous." *See Boyce v. Alizaduh,* 595 F.2d 948 (4th Cir.1979); *Pace v. Evans,* 709 F.2d 1428 (11th Cir. 1983); *McFadden v. Lucas,* 713 F.2d 143 (5th Cir.1983), *cert. denied,* 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983); *Wiggins v. New Mexico State Supreme Court Clerk,* 664 F.2d 812 (10th Cir.1981), *cert. denied,* 459 U.S. 840, 103 S.Ct. 90, 74 L.Ed.2d 83 (1982).

According to these cases, it is generally accepted that "frivolity" is determined by whether or not, "under any 'arguable' construction of [either] law or fact" the Plaintiff would possibly be entitled to relief. *Boyce* at 952. If not, the suit is properly dismissed as "frivolous." Application of this statute in recent years has amounted to a *sua sponte* 12(b)(6) dismissal, usually granted prior to the defendant's knowledge that the suit has even been brought. This articulated standard dictates a historical minimum of what can be dismissed as

"frivolous" by district courts without appellate disagreement.

The judiciary has not devoted a commensurate amount of time and attention to the interpretation of what § 1915(d) means by the term "malicious." Although this court did locate some cases at the district court level that dismissed suits as being "malicious," similar appellate decisions that hinge on that term eluded our probe. In most of those opinions in which the word "malicious" is even used in a § 1915(d) dismissal, it is tied to the term "frivolous:" i.e. the suit is dismissed as "frivolous *and* malicious." *See Duhart v. Carlson,* 469 F.2d 471, 473 (10th Cir.1972), *cert. denied,* 410 U.S. 958, 93 S.Ct. 1431, 35 L.Ed.2d 692 (1973). The cases in which the term "malicious" has been severed from the term "frivolous" and used as a separate ground for dismissal are few in number.

In *Daves v. Scranton,* a pro se inmate, convicted of rape and sodomy, sued his victim, an Assistant District Attorney, four police officers, and a newspaper, claiming that the criminal charges against him had been fabricated. He sought two hundred million to ten billion dollars damages. In Judge Higginbotham's opinion and order, his honor stated that

> "after reviewing the complaint in its entirety, I find that, considering the absence of any recital of credible probative facts supporting the allegations which the plaintiff has made and the character of the facts and the allegations recited in the complaint, the suit is brought *maliciously* and for the purpose of harassing the defendants." (emphasis added).

66 F.R.D. 5, 8 (E.D.Pa.1975).

In *Ballentine v. Crawford,* Judge Moody held that "a complaint plainly abusive of the judicial process is properly typed 'malicious' within the context of Section 1915(d) which authorizes dismissal of the same." 563 F.Supp. 627, 629 (N.D.Ind.1983). Judge Moody added that a "complaint that merely repeats pending or previously litigated claims may be considered abusive and a court may look to its own records to

determine whether a pleading repeats prior claims." *Id. citing Crisafi v. Holland,* 655 F.2d 1305, 1309 (D.C.Cir.1981). Although Judge Moody defined the term, the case was not disposed of on that independent ground, but was dismissed as "both frivolous and an abuse of judicial process (i.e. malicious)" pursuant to § 1915(d). *Id.*

In *Carter v. Ingalls,* Judge Bowden wades through an incredible pro se petition in which the plaintiff begins by alleging that he has been receiving improper medical treatment. 576 F.Supp. 834 (S.D.Ga. 1983). Although such a claim *can* be recognized as a legitimate one, the Plaintiff in *Carter* added an amazing twist. He explained his "improper medical treatment" by alleging that he had " 'blue ink and glass in the General sensory area' of his brain, as well as amnesia and failing eye sight." *Id.* at 835. The complaint there continued that one Defendant refused to administer the proper medication for these ailments: which, according to the plaintiff, should have been "Cocane of Porcane." [1] The Plaintiff Carter not only alleged that the hospital employees had put the "blue ink and glass" into his brain, but that they also "pushed [his head] into a sack with a rattlesnake and that the rattlesnake bit [him] on the face and thereby cracked [his] skull." *Id.* Judge Bowden held that a dismissal of a pro se complaint was "entirely proper at any time the Court is satisfied that an action is frivolous or malicious." *Id,* at 837, *citing Smith v. Wells,* 512 F.Supp. 503, 507 (W.D.Okl.1980). Judge Bowden apparently believed, and this court thinks justifiably so, that the action was BOTH "frivolous" *and* "malicious." He concluded his opinion with the belief that his "Court's adventures in the pro se prisoner world [would] continue." *Id.*

The foregoing indicates that precedent leaves us with an articulated standard of what is a "frivolous" action, but a much more vague interpretation of what constitutes a "malicious" one. However, the recitation of the above cases does highlight the stark realization of just how necessary

---

**1.** Judge Bowden's opinion hypothesized that "perhaps the plaintiff meant 'cocaine of por- cine.' The recipient of such a drug would, no doubt, be 'high on the hog.'"

§ 1915(d) has become in assisting with the disposition of prisoner petitions. Judge Bowden's closing comments in *Carter*, 576 F.Supp. at 837, are becoming more of an understatement every day. The number of prisoner petitions in the federal courts seems to escalate hourly. This court is well aware that the claims must be reviewed, but knows, like most of these plaintiffs and petitioners know, that few of the complaints and petitions are legitimate. Federal district courts need to retain the broad power and discretion to dispose of, not only ludicrous litigation, but also those suits that are technically cognizable, but brought because an inmate has nothing else to do with his time. This retained broad and discretionary power to dismiss, must of course only be exercised when the trial judge, drawing from his years of experience in reading complaints and living lawsuits from start to finish, is of the informed and experienced opinion that a technically cognizable lawsuit is in reality baseless.

In *Jones v. Bales*, it was held that the federal court's power to dismiss prisoner civil rights cases was "especially broad." 58 F.R.D. 453, 463–464 (N.D.Ga.1972), *aff'd.* 480 F.2d 805 (5th Cir.1973). The court there stated that

> [t]here are compelling reasons for allowing courts broader dismissal powers in forma pauperis suits—especially damage suits brought by convicted prisoners—than in other cases. Persons proceeding in forma pauperis are immune from imposition of costs if they are unsuccessful; and because of their poverty, they are practically immune from later tort actions for 'malicious prosecution' or abuse of process. Thus indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain. The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books and mailing privileges the temptation is especially strong. As Justice Renquist noted, 'Though [an inmate] may be denied legal relief, he will nonetheless have obtained a short sabbatical

in the nearest federal courthouse.' *Cruz v. Beto*, 405 U.S. 319 [92 S.Ct. 1079, 31 L.Ed.2d 263] (1972) (dissenting).

*Id*, at 463. The above quotation expresses well the understanding that many pro se litigants indeed have everything to gain and nothing to lose. The motivation behind many law suits is questionable at best. The possibility of a change of scenery alone provides inmates with sufficient motive in their own minds to file an action. This willingness to file suits is, as noted above, bolstered by the fact that prisoners who are the frequent litigators are usually unconcerned about any sanctions against them. Such realizations justified clearly for the *Jones* court that broad power to dismiss was vital, but unfortunately, some frivolous or malicious actions survive past the § 1915(d) determination stage. This court believes that these cases continue longer than they should because some courts refuse to dismiss claims unless the complaint fits neatly into a template cast by a predecessor. This court is determined to do its part to insure that no individual will be denied access to our courts because of lack of wealth or standing, but at the same time is painfully aware that some pro se actions brought are clearly without merit even though they may state a technically cognizable claim.

This court has attempted to point out that although our courts have dabbled with what § 1915(d) means by "frivolous or malicious," no concrete definition of that entire phrase has been articulated. This court submits that this reluctance or difficulty of defining the phrase is due to the fact that the statute was not drawn with words calculated to provide the judiciary with a rigid formula of when an in forma pauperis action should be dismissed; rather the statute's intent sought the utilization of the exercise of judicial discretion.

The original form of 28 U.S.C. § 1915(d) was labeled Chapter 209, Section 4. It became part of the United States Code on July 20, 1892, and read as follows:

> Sec. 4. That the court may request any attorney of the court to represent such poor person, if it deems the cause worthy of trial, and may dismiss any such cause so brought under this act if it be made to

appear that the allegation of poverty is untrue, or if said court be satisfied that the alleged cause of action is frivolous or malicious.

52nd Cong., 1st Sess., Ch. 209 (1892). Mr. Culberson of Texas, when introducing this bill on the floor of the house, stated that the law, if adopted, would "open the courts of the United States to a class of persons who are now denied the right of bringing suits in the courts of the United States, [because they] have no money or property by which to comply with the rules of the courts in respect to costs." H.R. 8153, 52nd Cong., 1st Sess., 23 Cong.Rec. 5199 (1892).

On April 14, 1892, Mr. Stockdale, from the Committee on the Judiciary, submitted a report summarizing this proposed and eventually adopted legislation. His report maintained that the

bill present[ed] the question [of] whether this government, having established courts to do justice to litigants, will admit the wealthy and deny the poor entrance to them to have their rights adjudicated.

*The proposed law will not admit of vexatious litigation. It is well guarded.* In order to get the privilege of the courts which litigants with money can demand without question and compel the court to hear their cases, anyone of these people who desires to enter the courts without money must first file in the court a statement under oath that because of his poverty he is unable to pay the costs of said suit or action or to give security for the same. He must also state that he believes he is entitled to the redress asked, and must set out the nature of his alleged cause of action.

The court may dismiss the suit at any time if it be made clear that the allegation of poverty is probably untrue, or *if he be satisfied* that *the alleged cause of action is frivolous or malicious.* (The word "probably" was deleted from the bill prior to its adoption.) (emphasis added.)

H.Rep. No. 1079, 52nd Cong., 1st Sess. (1892).

Since this bill became law, its language has changed, but the intent of the statute has survived legislative alteration. This court does not discount the possibility that this bill, even though adopted in 1892, meant what it said. It is clear to this court, that our legislators then attempted to insure that access to the federal courts was available to all, but at the same time, they sought to avoid opening the floodgates to the whim of what every potential pro se litigant perceived his rights to be. In the mind of this court, it is apparent that those legislators intended to rely on the wisdom and experience of our country's federal trial judges. If the trial judge, "deemed the cause worthy of trial," he could allow the suit to continue, but if "he [was] satisfied that the alleged cause of action [was] frivolous or malicious," he could dismiss the suit on his own motion and save the Defendants the time and expense of responding to baseless or vindictive litigation. It appears that our precedents sometimes ignore what this court honestly believes our legislators sought to achieve.

Certainly a claim that a plaintiff has no chance of winning, "beyond doubt, under any arguable construction of law or fact," is easily dismissed justifiably. Similarly, an abuse of the judicial process can be disposed of without fear of reprisal in the moral, equitable, or appellate senses. Dismissal of such cases does not present a judge with a difficult decision to make or justify. Although some cases that deserve immediate dismissal will not always fit articulated standards, the trained jurist can many times see through a screen of technically recognized allegations to discover a warrantless action. *Carter,* 576 F.Supp. at 835, discussed above, provides an excellent example. The claim there asserted could be one that was legally recognized, but from the face of that complaint, there was no doubt that the plaintiff was presenting the judiciary with nothing more than an opportunity to waste some time. It is inconceivable how much time and money § 1915(d) has rightfully saved taxpayers and defendants.

*Carter v. Telectron,* 452 F.Supp. 939 (S.D.Tex.1976) (this is not the same Plaintiff Carter previously discussed) provides a documented example of what a lone pro se

litigant can accomplish when he has nothing but time on his hands. The court there lists a history of this litigant's cases in court during a few of his years of incarceration. The list of one hundred and seventy-eight cases occupies thirty-four pages of that Federal Supplement. Although this court believes strongly that plaintiffs such as the Mr. Carters of the world are entitled to have their complaints judicially scrutinized in the event that one claim might one day be legitimate, this court also realizes that after enough practice, almost anyone can learn how to get past the pleading stage and further if they are willing to stretch the truth sufficiently. Broad power to dismiss these types of cases is obviously necessary, and this court believes an intended, exercise of judicial discretion. We in the judiciary, should not with precedent, tie our own hands to the extent that we make ourselves unable to keep pro se litigation in the federal courts from becoming a form of recreation for prison inmates.

■ It is simply a fact that an experienced reader of complaints probably *knows* more about that complaint after a reading than the mere words on the paper divulge to the average layman or the inexperienced attorney. Federal judges historically have years of experience before they are ever appointed to the bench. It is the opinion of this court that the drafters of the original form of § 1915(d) were wary of the possibility that their law might be misused and tried to make it "well guarded" by vesting in experienced trial judges the broad discretionary power to keep their dockets streamlined. Steering such a course with this proposed legislation would, as stated earlier, help keep the federal courts from becoming cluttered with baseless litigation, and at the same time, foreclose the possibility that an individual without sufficient funds could be denied access to our courts.

■ Boiling the above down to a nutshell overview indicates that a pro se complaint consists not only of printed words, but of the circumstances and history that surround the filing, the tone of the allegations, and whether probative facts vital to the life of the lawsuit have been alleged. If the judge, considering the totality of the writing, is convinced, in his or her learned and experienced judgment, that the action is "frivolous or malicious," then the judge should, as this court believes Congress intended, retain the broad discretionary power to dismiss the claim. When a judge clearly abuses this discretion, then our appellate courts are bound to reverse that initial determination. A claim that is "frivolous or malicious" is one that can range from the attempted litigation of a truly de minimus (non curat lex) matter to an abuse of judicial process, but neither pole should constitute a bright line incapable of being crossed when justice so requires.

■ The Plaintiff in this case is asserting a claim, that is obviously an attempt to harass the Defendants. The Plaintiff seeks 748 million dollars in damages for the harm done to his marriage, another 748 million for punitive damages, and lastly, 748 million in damages from the Defendants to compensate him for their "illegal activity to deprivation of plaintiff (sic) civil rights and comensatory (sic) damages, physical bodily injury and psychological mental angues (sic) suffering that et al, force and destroyed plaintiff life marriage (sic)." After reading the original and the supplemental complaints of this case, there is no doubt in the mind of this court that the Plaintiff is trying to teach these Defendants a lesson by dragging them through the federal judicial system. This court believes that assisting in the survival of this claim past this point in the suit would fly in the face of justice. This court must, when it can legally do so, for the sake of justice, refuse any assistance that extends the life of a claim that could not eventually exist on its own. This court has the power to dismiss this claim and will not, considering the circumstances, hesitate to exercise it.

This suit is justifiably DISMISSED for two reasons. First, this Plaintiff failed to comply with this court's order of January 9, 1987 by not amending his complaint to make it convey a short and plain statement of the facts surrounding his claim. Second, this suit may also be dismissed by the authority of 28 U.S.C. § 1915(d).

■ In reference to the latter, this court holds specifically that when there is no recital of credible probative facts that sup-

port the allegations that the plaintiff is attempting to make, the Plaintiff sues those involved in securing his incarceration, and the tone of all the Plaintiff's allegations indicates that he is bringing his suit merely to satisfy his desire for vengeance against the Defendants and not to rectify any wrong done to him, then the suit is a MALICIOUS one. Since this court has determined that this suit is "malicious," it has the broad discretionary authority to DISMISS it consistent with the legislative intent expressed in 28 U.S.C. § 1915(d).

Either of the above grounds independently supplies this court with adequate reason to dismiss this action. When coupled, the two unquestionably convince this court that dismissal is the only just disposition of this matter. Since the PLAINTIFF has NOT COMPLIED with this court's order of January 9, 1987, AND this action has been adjudged a "MALICIOUS" one, this lawsuit is ORDERED DISMISSED.

SO ORDERED.