Albert Russell **CLAY, Plaintiff,**

v.

George **YATES, et al., Defendants.**

Civ. A. No. 91–741–N.

United States District Court, E.D. Virginia, Norfolk Division.

Dec. 15, 1992.

Albert Russell Clay, pro se.

George Holton Yates, pro se.

Conrad Moss Shumadine, John Steven Wilson, Willcox & Savage, Norfolk, VA, for Rosemary Mann.

Paul Henderson Ray, pro se.

Lawrence Steven Emmert, Office of the City Atty., Virginia Beach, VA, for Frank LaPorta.

William Mark Dunn, Office of the Atty. Gen., Richmond, VA, for Honorable Calvin Spain.

## MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

Albert Russell Clay ("Clay"), an inmate at the Greensville Correctional Center, filed this *pro se* action under 42 U.S.C. § 1983 on November 25, 1991.[1] Clay alleges that George Yates ("Yates"), the Honorable Calvin Spain ("Judge Spain"), Rosemary Mann ("Mann"), Paul Ray ("Ray"), and Frank LaPorta ("LaPorta"), acting individually and as co-conspirators, violated his constitutional rights.

Clay previously has commenced in this court seven other actions seeking damages or injunctive relief under 42 U.S.C. § 1983,[2] and seven actions seeking of a writ of habeas corpus.[3] Like most of its predecessors, this action arises out of Clay's two convictions in 1987, both pursuant to pleas of guilty, in the Circuit Court of the City of Chesapeake for malicious wounding and in the Circuit Court of Virginia Beach for assault and conspiracy to commit a felony.

The defendants in this action played various official roles in Clay's conviction in the Circuit Court of the City of Virginia Beach or in subsequent related and unrelated proceedings. LaPorta was a police detective with the City of Virginia Beach who investigated the offenses of which Clay was convicted. Yates was the Assistant Commonwealth's Attorney who prosecuted Clay. Ray, a private attorney, represented Clay only during the sentencing phase of the proceedings. Judge Spain was the judge who accepted Clay's plea of guilty and sentenced him. Mann is a deputy clerk of court in the Circuit Court of the City of Virginia Beach who, pursuant to law, court procedures or court orders took, or refrained from taking, certain actions following Clay's conviction.

Clay's voluminous pleadings in this action are exceedingly difficult to understand and, in fact, are often incoherent. At one point in his complaint, Clay contends that the purpose of this action is to redress his alleged false arrest, false imprisonment, denial of access to the courts, intentional deprivation of property without due process and violation of the double jeopardy clause of the Constitution. (Compl. ¶ 2). Elsewhere Clay alleges that the defendants conspired together to commit the acts complained of above. (Compl. ¶¶ 1, 3). Clay also charges (and then never again mentions) the existence of a conspiracy among the defendants to cover up another alleged conspiracy between Clay's former wife and a person named Hewitt to murder Clay in order to secure his business and insurance.

Clay seeks a declaration that his constitutional rights have been violated, an injunction requiring the defendants to remove all information in his prison file relating to the "action taken in Virginia Beach Court" and an injunction requiring the Clerk of the Circuit Court of the City of Virginia Beach to docket and issue unspecified orders. Finally, Clay seeks compensatory and punitive damages from all defendants except Judge Spain.[4]

---

**1.** Clay's complaint was received on October 31, 1991, but was not filed at that time because he had failed to pay the required partial filing fee. Clay's complaint was ordered filed on November 25, 1991 after payment of that fee, and Clay was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915.

**2.** Cases 2:91cv84, 2:92cv556, 2:92cv643, 2:89mc172, 2:89mc225, 2:89CV895, and 2:90mc228.

**3.** Cases 2:90cv1123, 2:90cv1600, 2:92cv230, 2:89cv52, 2:89cv232, 2:90cv219, and 2:90cv1674.

**4.** Clay also seems to complain about: (1) an injurious plea agreement; (2) the use of false and improper evidence secure his conviction; and (3) an unspecified failure to restore good time credits. Such claims are properly redressed, if at all, by way of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, rather than in this action under 42 U.S.C.

All five defendants filed motions to dismiss or, in the alternative, for summary judgment. Clay also filed a motion for summary judgment, along with supporting documents. On April 20, 1992, Judge Doumar entered an order advising that all of the motions would be treated as motions for summary judgment, and allowing the parties to submit additional supporting pleadings.[5] Subsequently, on July 28, 1992, the case was reassigned to the undersigned because of a complaint made by Clay that Judge Doumar was acquainted with a lawyer whom Clay proposed to add as a defendant.

Notwithstanding that Clay has submitted an enormous volume of paper and mindful of the rule that a *pro se* litigant's pleadings should be construed liberally in his favor, see *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Coleman v. Peyton*, 340 F.2d 603 (4th Cir.1965), *cert. denied*, 385 U.S. 905, 87 S.Ct. 216, 17 L.Ed.2d 135 (1966), the court is of the opinion that Yates, Mann, Ray and Judge Spain are entitled to summary judgment; that Clay's motion for summary judgment should be denied as to all defendants; and that Clay's motion for leave to amend his complaint to add additional defendants should be denied. The pleadings respecting Clay's claims against LaPorta must be supplemented before a decision can be made on those claims.

### The Standard for Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In considering a motion for summary judgment the court is not to weigh the evidence, but rather must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In so doing, the court must view the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Catawba Indian Tribe v. South Carolina*, 978 F.2d 1334, 1338 (4th Cir.1992). Once this initial showing under Rule 56(c) is made, the burden of production, not persuasion, shifts to the non-moving party. The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e); *Catawba Indian Tribe*, 978 F.2d at 1338.

In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. That party must demonstrate that there is a *"genuine issue for trial."* Fed.R.Civ.P. 56(c) (emphasis added); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsu-*

§ 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 489, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973) (actions "attacking the validity of the fact or length of confinement" are not cognizable under § 1983). *See also Todd v. Baskerville*, 712 F.2d 70, 71–72 (4th Cir.1983).

5. Apparently, no formal *Roseboro* notice has been given in this case. *See Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975). However, since Clay has filed affidavits and other materials, both in opposition to the defendants' motions for summary judgment and in support of his own, the court finds that the objectives behind the *Roseboro* notice have been met in this case and that giving Clay such notice at this stage in the proceedings would be superfluous and unnecessary.

*shita*, 475 U.S. at 587, 106 S.Ct. at 1356. *See also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

### Discussion

On June 10, 1987, Clay entered a plea of guilty in the Circuit Court of the City of Chesapeake to a charge of conspiracy to commit malicious wounding. On September 7, 1988, Clay was sentenced by that court to imprisonment for ten years. On June 24, 1987, Clay entered a plea of guilty in the Circuit Court of the City of Virginia Beach to charges of assault and conspiracy to commit the felony of malicious wounding. On October 11, 1988, Clay was sentenced by that court to imprisonment for ten years. That sentence was to run consecutively to the sentence imposed by the Circuit Court of the City of Chesapeake. Clay was represented by counsel in each of these proceedings.

In an effort to determine the basis of Clay's claims which might be cognizable under 42 U.S.C. § 1983, the court has reviewed carefully all of the pleadings Clay has filed and has taken instruction from the defendants' pleadings to discern how they understand the charges being made against them. It appears that the charges Clay intends to assert against the defendants under § 1983 are most concisely described in paragraphs 6 through 10 of the Complaint. When read in conjunction with the rest of the Complaint and Clay's opposition to the defendants' motions, those paragraphs best summarize what Clay considers to be the essence of his perceived grievances against each of the five defendants.

### I. *The Claims Against George Yates*

■ Yates was the Assistant Commonwealth's Attorney for the City of Virginia Beach who prosecuted Clay for assault and for conspiracy to have Clay's wife's legs broken in an attempt to end her career as a go-go dancer. Clay alleges that the acts of prosecution in which Yates engaged were without probable cause and in the absence of jurisdiction:

> Defendant, George Yates was the Assistant Commonwealth Attorney for Virginia Beach and at all times mentioned herein was a citizen of the United States, furthermore, at all times mentioned herein was acting in clear absence of jurisdiction and prosecuting plaintiff in the absence of probable cause, whereby defendant instructed defendant LaPorta to arrest plaintiff "on the sceen Police" refused to arrest Plaintiff, and Defendant prosecuted Plaintiff in Clear asence of jurisdiction, when he knew plaintiff had pleaded Guilty to the "Same offence" same Conduct and such is listed as a single charge the same entire evidence in two venues, therefore, defendants "want of jurisdiction and absence of deprives him of immunity:

(Complaint, ¶ 6).

Clay's basic contention seems to be that Yates is liable for prosecuting Clay in the Circuit Court for the City of Virginia Beach which was without jurisdiction to accept his guilty plea or to sentence him because, pursuant to a prior plea of guilty, he already had been convicted of malicious wounding by the Circuit Court of the City of Chesapeake. Clay further alleges that Yates departed from his prosecutorial role and injured Clay by instructing the police to arrest him.

Yates filed a motion to dismiss for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6), on the ground that the suit against him is barred by the doctrine of prosecutorial immunity. In response to the court's order of April 20, 1992, Yates filed a supplemental memorandum and a supporting affidavit. The supplemental filing by Yates establishes that, with the possible exception of the allegation that Yates ordered Clay's arrest, all allegedly offending conduct in which Yates engaged was prosecutorial in nature and was in furtherance of his duties as Assistant Commonwealth's Attorney. Clay's response simply recapitulated the conclusory allegations of his complaint.

It is clear that "in initiating a prosecution and in presenting the State's case, [a] prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). A prosecutor who is engaged in a function "intimately associat-

ed with the judicial phase of the criminal process," *id.*, is afforded absolute immunity, rather than qualified (or "good faith") immunity. *Id.* at 427–28, 96 S.Ct. at 993–94. *See also Kipps v. Ewell*, 538 F.2d 564, 566 (4th Cir.1976) (commonwealth's attorney is immune from any civil action connected with his prosecuting function). This absolute immunity is not defeated even by a showing that the prosecutor acted wrongfully or maliciously. *Imbler*, 424 U.S. at 427, and n. 27, 96 S.Ct. at 993, and n. 27. Accordingly, Yates is absolutely immune from suit for all acts allegedly committed in his prosecutorial capacity.

■ This leaves for resolution Clay's contention that Yates ordered LaPorta to arrest Clay and that, in so doing, Yates acted beyond the scope of his prosecutorial immunity. It is, of course, possible for non-advocative conduct by a prosecutor to fall beyond the absolute immunity afforded prosecutors for their conduct as advocates. *Burns v. Reed*, —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). However, that principle is inapplicable here because Clay has failed to identify any facts or evidence which would support a finding that Yates acted in anything other than his prosecutorial capacity. Clay has submitted no evidence other than his own unsubstantiated and somewhat garbled assertions that Yates played any part in his arrest, let alone that Yates instructed the police to arrest him. Not one of the numerous affidavits submitted on Clay's behalf even addresses Yates' alleged role in Clay's arrest. Yates, for his part, has submitted evidence showing that he only became involved in Clay's case *after* Clay had been arrested. Hence, Clay has failed to sustain his burden of establishing the existence of a genuine issue of material fact that would preclude summary judgment. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *see Atkinson v. Bass*, 579 F.2d 865 (4th Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 615, 58 L.Ed.2d 679 (1978).

Accordingly, summary judgment will be entered against Clay on his claims against Yates.

## II. *The Claims Against Judge Spain*

■ Clay alleges that:

Defendant, Calvin Spain at all times mentioned herein was a citizen of the United States and some of the time mentioned herein was defense Counsel for the Plaintiff, and most of the acts herein complained of was a judge in the Virginia Beach Circuit Court. At all times herein complained of defendant was acting "knowingly in clear absence of jurisdiction and further acted in the face of Clearly valid statutes and case law to expressly deprive plaintiff of his Constitutional rights, Therefore, deprived him further of jurisdiction.

(Complaint, ¶ 7).

Construed most favorably to Clay, the record is that at some time before Judge Spain was appointed to the bench, but before the incidents which gave rise to Clay's convictions, Judge Spain had represented Clay in business transactions completely unrelated to his convictions. That attorney-client relationship allegedly ended because of a dispute over fees. However, all claims asserted against Judge Spain are said to have arisen as a consequence of his service as a judge on the Circuit Court of the City of Virginia Beach. There is no charge that Judge Spain was asked to recuse himself or that he should have taken such action *sua sponte*. Nor is there any allegation that Clay's claims against Judge Spain are related in any way to the former attorney-client relationship.

Judge Spain contends that Clay's claims against him are barred by the doctrine of judicial immunity. It has long been the rule that " 'judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.' " *Stump v. Sparkman*, 435 U.S. 349, 355–56, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872)). The doctrine of judicial immunity provides an absolute defense in civil actions for damages brought under 42 U.S.C. § 1983. *See Pierson v. Ray*, 386

U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Stump v. Sparkman,* 435 U.S. at 356, 98 S.Ct. at 1104. Moreover, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman,* 435 U.S. at 356–57, 98 S.Ct. at 1105 (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) at 351)). The immunity afforded to judges for their judicial acts is absolute, even if those acts are erroneous or in excess of their jurisdiction. *Id.,* 435 U.S. at 359, 98 S.Ct. at 1106.

Judicial immunity depends upon the "nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump,* 435 U.S. at 362, 98 S.Ct. at 1107. Clay alleges that Judge Spain was "deprived of all jurisdiction" because he: (1) denied Clay counsel of his choice; (2) sentenced Clay for the same offense that was the basis for Clay's conviction and sentence in the Circuit Court for the City of Chesapeake; and (3) directed the clerk of court (Mann) not to send papers to Clay as long as he was represented by counsel.

■ Clearly Judge Spain was acting in his judicial capacity when he performed the acts which Clay alleges expose him to liability. The appointment of counsel and the giving of directions to the clerk of court are judicial acts. *See, e.g., Edwards v. Hare,* 682 F.Supp. 1528 (D.Utah 1988) (appointment of counsel a judicial act); *DeFerro v. Coco,* 719 F.Supp. 379 (E.D.Pa.1989) (instruction not to accept papers for filing a judicial act). Likewise, the imposition of a

sentence is a judicial act within the jurisdiction of the Circuit Court of the City of Virginia Beach. *See* Va.Code Ann. §§ 19.2–239; 19.2–254. Hence, even assuming *arguendo* that Judge Spain acted as Clay alleges, the acts alleged to constitute the basis for Judge Spain's liability were at best erroneous acts within his jurisdiction or acts in excess of his jurisdiction. More importantly, the allegedly offending conduct attributed to Judge Spain is precisely the kind of conduct for which *Stump v. Sparkman* and *Bradley v. Fisher* afford immunity. Accordingly, Judge Spain is entitled to summary judgment.[6]

### III. *The Claims Against Rosemary Mann*

■ As to Mann, Clay's complaint states: Defendant, Rosemary Mann, at all times mentioned herein and complained of was a Assistant Deputy Clerk of the Virginia Beach Circuit Court Clerks Office, and a citizen of the United States, and acted upon knowingly wrongful instruction to deprive plaintiff of documents he had a clear right to and deprived him of appeal by trickery and still fails to place plaintiff on docket call so he can obtain access to the court to obtain his property. Therefore, depriving plaintiff of property by denial of access to the court in the face of well established "court orders" and statute.

(Complaint, ¶ 8).

The materials Mann filed in support of her motion to dismiss show that all of the acts said to give rise to her liability were taken pursuant to law, judicially established rules, or judicial instruction. The materials filed by Clay do not suggest otherwise.

---

**6.** It also appears that Clay's request for injunctive relief may be directed against Judge Spain in that Clay asks for an order directing that materials related to the Virginia Beach conviction be removed from his prison file. Although this relief is conceptually available in an action under 42 U.S.C. § 1983, a jurisdictional prerequisite to such an action is that Clay must first have requested the appropriate authorities to expunge the materials. *Paine v. Baker,* 595 F.2d 197, 202–03 (4th Cir.), *cert. denied,* 444 U.S. 925,

100 S.Ct. 263, 62 L.Ed.2d 181 (1979). Moreover, Clay must exhaust state remedies as required by 28 U.S.C. § 2254(b). *See Swinson v. Stephenson,* 634 F.2d 626 (4th Cir.1980). Finally, the relief is available, if at all, from the custodian of Clay's prison files, not from Judge Spain. For these reasons, Clay has failed to establish that he has complied with either of the jurisdictional requirements for this kind of relief and he has sought the relief from the wrong person.

Court clerks, such as Mann, are accorded derivative absolute immunity when they act in obedience to judicial order or under the court's direction. *See, e.g., McCray v. Maryland,* 456 F.2d 1 (4th Cir.1972); *Lockhart v. Hoenstine,* 411 F.2d 455 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969). At paragraph 40 of the Complaint, Clay augmented the charges against Mann by stating that Mann refused to provide certain information he had requested. While it is true that court clerks generally do not enjoy absolute immunity when they perform ministerial duties such as filing pleadings or responding to requests for court files, *see McCray,* 456 F.2d at 4, it is equally true that a court clerk is entitled to derivative absolute immunity when performance of, or refusing to perform, the ministerial act of filing pleadings or responding to requests for information is *in accordance with a judicial order. Id.* at 5. *See also DeFerro v. Coco,* 719 F.Supp. 379 (E.D.Pa.1989). In paragraph 40 of the complaint Clay clearly states that Mann was acting pursuant to a judicial order, and none of his other pleadings contradict this conclusion. Moreover, Mann has submitted a copy of a letter dated May 15, 1989, from Judge Spain to Clay, which shows that Mann was ordered by the court to ignore Clay's repeated requests for information. Thus, even if Mann performed the acts alleged to give rise to her liability, she is protected under the doctrine of derivative absolute immunity.[7]

▮ Likewise, Mann is entitled to derivative absolute immunity for the act of failing to place Clay's state civil action on the docket for trial. The Circuit Court of the City of Virginia Beach uses a praecipe system to set cases for trial and motions for hearing. (Mann Affidavit at ¶ 15; *see* Rule 1.15 of the Rules of the Supreme Court of Virginia). Clay was advised of the docket

call procedure by letter from the court on November 6, 1990. (Mann Aff. ¶ 15). Clay initially tried to set his state action for trial by submitting a praecipe which stated that counsel for the opposing party had agreed on a trial date. (*Id.* at ¶ 16). Counsel for the defendant in that case informed the court that no such agreement had been made. Further, Clay had not cleared the selected date with the docket clerk, as is required by the rules of procedure in the state court. For these reasons, the state court entered an order quashing the original praecipe. (*Id.* at ¶ 17).

Clay subsequently filed a praecipe asking that his case be called at the December 3, 1990 docket call and thereupon set for trial. However, neither Clay nor his representative appeared at docket call to set the case for trial. Therefore, the praecipe was passed. (Martin Affidavit at 3). Nor did Clay appear at, or send a representative to attend, the docket call held May 6, 1991. (*Id.* at 4).

The record shows clearly that, contrary to his conclusory allegations, Clay has not been denied access to the circuit court in his state case by Mann. His civil case is pending and a trial date will be set once Clay complies with the praecipe procedure. (*See* Mann's Memorandum in Support of Motion to Dismiss at 20). More importantly for this case, Mann is not empowered to disregard the court ordered praecipe system which governs the rights of Clay and the defendant in the state civil action. *See Eakins v. Reed,* 710 F.2d 184, 186 (4th Cir.1983) (holding that although *pro se* complainants are entitled some flexibility, the defendants also have due process rights which must be protected).[8] Here too Mann acted pursuant to judicially proscribed procedures and, accordingly, she is entitled to absolute immunity for the acts

---

**7.** In paragraph 40 of the complaint, Clay also says that Mann "evidently threw it [a pleading he wanted to have filed] away." Mann unequivocally denies the charge [Mann Aff. ¶ 2] and explains that on November 2, 1990, the pleading was returned to Clay because *it was premature.* [Mann Aff. ¶ 7]. Clay then failed to resubmit the papers in a timely manner. [*Id.* at ¶ 8]. Clay does not further pursue the matter except

in conclusory terms that are insufficient as a matter of law to avoid summary judgment.

**8.** In fact, if Mann had failed to follow the praecipe system, she would have been in violation of the court's order regarding the setting of cases. (*See* Local Rule attached as Exhibit 9 to Mann Affidavit).

on which Clay predicates this part of his claim against her.

Accordingly, summary judgment will be entered for Mann on all claims against her.

## IV. *The Claims Against Paul Ray*

Clay alleges that:

Defendant, Paul Ray., at all times mentioned herein was a citizen of the United States and a Private attorney, who conspired with defendant George Yates to falsely incarcerate this Plaintiff in this action in clear absence of jurisdiction who further suppressed exculpatory evidence that the defendant Yates had been doing, that showed that defendant Yates with defendant LaPorta had prepared false evidence by acts and omissions of actors in a fabricated Crime to falsely incarcerate Plaintiff. And was acting under Color of State law for purposes of this action by reaching an understiand to delete eyewitnesses and vidio tape as to the immposibility of the alleged abduction which was a arrest without probable cause and no facts to support it. Further deprived Plaintiff of sustantial line of Questioning that the Commonwealth's own witnesses said was a set-up to "get plaintiff any way they could" which was a conspiracy to conceal conspiracy to subordanate perjury by Yates and LaPorta. and he further attempted to get plaintiff'sd witnesses to subordanate purjury.

(Complaint, ¶ 9).

Clay asserted identical claims against Ray in an action in the United States District Court for the Western District of Virginia, *Clay v. Blankenship,* No. 90–0754–R. By memorandum order dated April 1, 1991, that court dismissed with prejudice the same claims that Clay seeks to assert here against Ray.

Clay's claims against Ray are barred by res judicata. The essential elements of res judicata are: (1) a final judgment on the merits in an earlier suit; (2) identity of cause of action in the two suits; and (3) identity of parties in the two suits. *See Keith v. Aldridge,* 900 F.2d 736 (4th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990). All these elements are satisfied in this case, and Clay cannot re-litigate the identical claims in this court. Accordingly, Ray is entitled to summary judgment on the claims against him.

## V. *The Claims Against LaPorta*

Clay alleges that:

Defendant, Frank LaPorta, at all times mentioned herein was a citizen of the United States and police detective for the Virginia Beach Police department. The defendant in his professional capacity had a legal responsibility to act in compliance with the law of the Commonwealth of Virginia and of the United States in the course of his official and personal capacity and to treat the defendant equal as all citizens of the Commonwealth of Virginia. The defendant LaPorta in finding no probable cause falsely arrested plaintiff in clear absence of probable cause, done so upon the instruction of George Yates who gave false advice about probable cause to LaPorta and the defendant LaPorta knew it to be false. The defendant furthered this by conspiring with Yates on April 23, 1987 to continue to prosecute the plaintiff in clear absence of probable cause,. seen by there/own witness who was suppressed that she was involved during the conspiracy to set-up plaintiff and the defendant sat by and let Plaintiff be sentenced on the false crime's he had helped by Omissions of parties and adding others tainting the entire legal process. The defendant sat by and let this take place on October 11, 1988.

(Complaint, ¶ 10).

Even after careful and repeated review of the pleadings submitted by Clay, the court is unable to ascertain the basis of his claims against LaPorta. Unfortunately, LaPorta's responsive pleadings are similarly unenlightening. The court considers that, as a consequence, the interests of justice would not be served by a ruling on LaPorta's motion for summary judgment at this time.

The court finds it necessary to require Clay and LaPorta to submit additional pleadings to clarify their respective positions. Accordingly, Clay is ordered to file

within 20 days of the entry of this Memorandum Opinion and Order a *clear* and *concise* statement of the *facts* which are thought by him to give rise to LaPorta's liability under 42 U.S.C. § 1983. Clay is instructed not to submit any additional legal argument or merely repeat his conclusory allegations, and he is admonished that failure to abide by the terms of these instructions will result in dismissal of his claim against LaPorta.

LaPorta is ordered to file a response to Clay's submission within 20 days after he is served with it. Clay may file a reply within ten days after service of LaPorta's response.

### VI. *Clay's Amended Complaint*

■ Clay tendered an amended complaint on December 9, 1991, attempting to name four additional defendants: Richard Brydges, Patricia Clay, "Pamela Hutceson Albert" [sic], and Debbie Messina. The amended complaint has not been filed and the defendants have not been served. The proffered amendment alleges that the four putative defendants were part of the conspiracy to have Clay incarcerated in violation of his First, Fifth, Sixth, Eight and Fourteenth Amendment rights. The record shows that these claims are barred by the statute of limitations.

The time limitations for actions brought under 42 U.S.C. § 1983 are borrowed from state law. *Burnett v. Grattan,* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984); *Cox v. Stanton,* 529 F.2d 47 (4th Cir.1975). The statute of limitations in Virginia for actions brought pursuant to 42 U.S.C. § 1983 is two years. *United Steel Workers v. Dalton,* 544 F.Supp. 291, 296–97 (E.D.Va.1982). *See also* Va.Code Ann. § 8.01–243(A) (Michie Supp.1991). Accrual of a civil rights action is, however, a question of federal law. *Cox,* 529 F.2d at 50. "Federal law holds that the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action." *Id. See also Sattler v. Johnson,* 857 F.2d 224 (4th Cir.1988) (action accrues when plaintiff exercising due diligence should have discovered factual basis).

■ Amendment of a complaint will not be allowed where it would be a futile act. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir.1986). Addition of claims which are barred by the statute of limitations would be a futile act. *See, e.g., Marx v. Centran Corp.,* 747 F.2d 1536, 1551 (6th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985). Clay alleges that Brydges, Patricia Clay, Albert, and Messina were part of the "conspiracy" which resulted in his convictions and sentencing in 1987. The amended complaint shows on its face that the acts giving rise to the claims against these putative defendants occurred in 1987, and that Clay knew about the acts at or about the time of his 1987 convictions. Accordingly, Clay's claims against these four putative defendants were time-barred long before Clay tendered the amended complaint in December 1991, and therefore the court will not grant leave to amend the complaint to add Brydges, Patricia Clay, Albert, and Messina as defendants.[9]

### VII. *Clay's Motions for Summary Judgment*

■ Clay has moved for summary judgment against defendants Yates, Judge Spain, Mann, Ray and LaPorta. His motions for summary judgment against each of these defendants appear to be based on the mistaken belief that, by filing motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the defendants have now affirmatively admitted the truth of the allegations of his Complaint. Although it is true that, for the limited purpose of deciding a motion to dismiss under that rule, the court must "presume all factual allegations of the complaint to be true," *see generally* 2A Moore's Federal Practice ¶ 12.07[2.–5], that does not mean that the allegations of the complaint are admitted as true. Moreover,

---

9. Clay's amended complaint has not, and will not, be filed. Hence, the court will not consider Clay's motion for default judgment against these putative defendants because Clay's ground for seeking default judgment is that they have not responded to the amended complaint.

by Order dated April 20, 1992, the court informed all parties that the motions to dismiss would be converted to motions for summary judgment under Fed.R.Civ.P. 56. This case is therefore procedurally past the motion to dismiss stage, and for the purpose of deciding the motions for summary judgment, the court is no longer bound to presume as true the allegations of Clay's complaint.[10] Moreover, the materials submitted by the defendants clearly establish the existence of factual disputes which would have precluded summary judgment in Clay's favor if the defendants' motions had not been granted. Accordingly, Clay's motions for summary judgment is denied.

## VIII. *The Application of 28 U.S.C. § 1915(d)*

The court also finds that Clay's complaint against Yates, Ray, Mann and Judge Spain is subject to dismissal under 28 U.S.C. § 1915(d) because, at least as to those defendants, this *in forma pauperis* action is frivolous and malicious. *See, e.g., Denton v. Hernandez,* — U.S. —, —, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992) (court may dismiss under § 1915(d) if satisfied that the action is frivolous or malicious); *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989); *Graham v. Riddle,* 554 F.2d 133, 134 (4th Cir.1977); *Cello–Whitney v. Hoover,* 769 F.Supp. 1155, 1158 (W.D.Wash. 1991); *Spencer v. Rhodes,* 656 F.Supp. 458, 459 (E.D.N.C.), *aff'd,* 826 F.2d 1061 (4th Cir.1987).

The Supreme Court of the United States recently defined the term "frivolous" as used in 28 U.S.C. § 1915(d). In *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), the Court held that § 1915(d) contemplates dismissal of claims which are based not only on "an indisputably meritless legal theory," but also those claims where "factual contentions are clearly baseless." *Id.* at 327, 109 S.Ct. at 1833. The Court explained that:

Examples of the former class are claims against which it is clear that the defendants are immune from suit, ..., and claims of a legal interest which clearly does not exist,.... Examples of the latter class are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.

*Id.* at 327–28, 109 S.Ct. at 1833 (citations omitted).

Clay's claims against Yates, Mann and Judge Spain fall squarely within the definition of legal frivolity set forth in *Neitzke* because it "is clear that the defendants are immune from suit." *Id.* To the extent that Clay has asserted any potentially cognizable claims under § 1983, they are asserted against three defendants (a judge, a prosecutor and a court clerk acting pursuant to judicial order) who are absolutely immune. The claim against Ray is clearly barred by res judicata, and hence it too is legally frivolous.

Moreover, a reading of the complaint and the other pleadings filed by Clay shows clearly that his conspiracy claims in this action describe fanciful, fantastic and delusional scenarios. Consequently, they are factually frivolous. *Neitzke v. Williams,* 490 U.S. at 327–328, 109 S.Ct. at 1832–33.

The definition of a "malicious" action under 28 U.S.C. § 1915(d) is not as well settled as the definition of frivolity. However, the decisions which have addressed the issue teach that it is appropriate to consider what the court's records show about the number and kinds of cases instituted by the *pro se* litigant, and the extent to which the conduct of that litigant constitutes an abuse of the judicial process. *See, e.g., Ballentine v. Crawford,* 563 F.Supp. 627, 629 (N.D.Ind.1983) ("a complaint plainly abusive of the judicial process is properly typed 'malicious' within the context of Section 1915(d)").

In *Crisafi v. Holland,* 655 F.2d 1305 (D.C.Cir.1981), the United States Court of Appeals for the District of Columbia Circuit held that a complaint which merely repeats pending or previously litigated claims may be considered abusive. *Id.* at 1309. The court also held that a court may

---

**10.** See pp. 420–421, *supra.*

look to its own records in determining whether a pleading repeats prior claims. *Id. Accord Cello–Whitney v. Hoover,* 769 F.Supp. 1155 (W.D.Wash.1991); *Spencer v. Rhodes,* 656 F.Supp. 458, 460 (E.D.N.C.), *aff'd,* 826 F.2d 1061 (4th Cir.1987); *Ballentine v. Crawford,* 563 F.Supp. 627 (N.D.Ind.1983); *Cf. Graham v. Riddle,* 554 F.2d 133, 135 (4th Cir.1977) (tacitly approving the district court's inspection of its own records). An examination of this court's records reveals that Clay has filed fifteen *in forma pauperis* complaints in the Eastern District of Virginia alone since his conviction in 1988. These actions are listed on Appendix A. Clay has filed eight complaints seeking relief under 42 U.S.C. § 1983 and seven complaints under 28 U.S.C. § 2254, in which for the most part he seeks similar, if not virtually identical, relief from the same defendants. Most of those actions relate to Clay's two state convictions and most of them center on the double jeopardy issue which lies at the core of the complaint in this action.

This action is but one example of the repetitive and frivolous nature of the claims advanced by Clay and of his abusive tactics. Clay's basic complaints in this action turn on the theory that his conviction in the Circuit Court of the City of Virginia Beach violated the double jeopardy clause because of his previous conviction in the Circuit Court of the City of Chesapeake. In at least one prior action, the United States Court of Appeals for the Fourth Circuit sustained dismissal of the double jeopardy claims here advanced.[11] Furthermore, three of the defendants clearly are immune from suit, and the action against another defendant is clearly barred by res judicata.[12] Moreover, the claims asserted in this action also appear in many of the earlier actions filed by Clay. This action alone has generated a file which is now almost a foot thick and which is filled with conclusory, vexatious, and often incomprehensible pleadings. The defendants have been forced to defend legally frivolous claims, and the resources of the court have been needlessly devoted to the resolution of legally baseless claims.

Plainly, the provisions of 28 U.S.C. § 1915 serve several important purposes in the federal judicial system. But providing a forum for the kind of legally baseless, factually delusional charges advanced here by Clay is not among them. To the contrary, this action presents a vivid example of why Congress enacted § 1915(d).

A review of other actions filed in this court by Clay discloses further abuses. For example, without any lawful basis whatsoever, Clay has named as defendants in other actions a law clerk to one of the judges of the court and the Clerk of Court and most of her staff. It is apparent from the records of the court that Clay has come to use litigation *in forma pauperis* as a weapon to attack those who do not help his cause or who fail to act as he wants them to act, rather than as a vehicle for the redress of legitimate claims as Congress intended when it enacted 28 U.S.C. § 1915.

■■■ The court finds that Clay's demonstrated litigious propensities are a clear abuse of both the judicial process and the privilege of litigating *in forma pauperis.* Accordingly, the court directs that henceforth Clay will be denied leave to file actions *in forma pauperis* in this court, except upon good cause shown. If Clay wishes to continue filing at his present rate he must pay the full filing fee of $120.00 for each complaint submitted. *See* 28 U.S.C. § 1915(a); *Graham v. Riddle,* 554 F.2d 133, 134–35 (4th Cir.1977).

Furthermore, the court considers it necessary to impose further constraints to protect the defendants in existing actions and the resources of the court in existing actions, as well as in future actions Clay may wish to pursue, from the kind of abuses which appear in the record of this action and in the other actions listed in Appendix A. Accordingly, effective immediately, all pleadings tendered by Clay in existing ac-

---

**11.** *See Clay v. Murray,* 937 F.2d 602 (4th Cir. 1991) (unpublished) (finding Clay's double jeopardy claim without merit).

**12.** *See Clay v. Blankenship,* No. 90–0754–R (W.D.Va. April 1, 1991) (unpublished).

tions (excepting those required to be filed pursuant to paragraph 4 below or by orders currently in effect in any other action currently pending in this court), and any future *in forma pauperis* actions tendered for filing by Clay, will be filed only with approval of a judge of this court.

### CONCLUSION

For the reasons set forth above, it is hereby ORDERED:

1. That summary judgment is GRANTED in favor of Yates, Judge Spain, Mann and Ray;
2. That Clay's motion for summary judgment is DENIED;
3. That Clay's motion for leave to amend his complaint to add additional defendants is DENIED;
4. That Clay and LaPorta shall submit additional pleadings in accordance with the schedule set forth above; and
5. That the Clerk of the Court shall not file further pleadings tendered by Clay in existing actions (excepting those required to be filed pursuant to paragraph 4 below or by orders currently in effect in any other action currently pending in this court) or any new actions instituted by Clay without prior written order of a judge of this court.

On September 30, 1992, Clay filed a notice of appeal in this action which he characterized as an appeal from a denial of a temporary restraining order. By order dated October 15, 1991, the United States Court of Appeals for the Fourth Circuit advised that the appeal was docketed as a petition for writ of mandamus.

It is so ORDERED.

### APPENDIX A

I. *Cases Filed Under 42 U.S.C. § 1983*

1. *A.R. Clay v. Frank Drew, Sheriff, et al.*, C.A. 2:91cv84. Suit by Clay to redress injuries alleged to have been sustained while Clay was incarcerated at the Virginia Beach Correctional Center. Clay also raised double jeopardy, malicious prosecution, coerced plea agreement and conspiracy charges.

   *Status*: On partial remand from Fourth Circuit Court of Appeals on issue of adequacy of the law library (January 3, 1993).

2. *Albert Russell Clay, Jr. v. George Yates, et al.*

   C.A. 2:91cv741 (present case).

3. *Albert Russell Clay, Jr. v. William T. Ryan, Clerk of the Circuit Court of Norfolk, Virginia, et al.*, C.A. 2:92cv556. Suit by Clay alleging a conspiracy to deny him access to the circuit court.

   *Status*: Pending with Clay's motion to proceed *in forma pauperis* under consideration.

4. *Albert Russell Clay, Jr. v. Doris R. Casey and United States Court Clerks*, C.A. 2:92cv643. Clay alleges that the clerks in the Norfolk Division failed to file his claims and motions and have refused to send him information that would end his incarceration.

   *Status*: Pending with Clay's motion to proceed *in forma pauperis* under consideration.

5. *Albert Russell Clay, Jr. v. Virginia Beach Correctional Center*, C.A. 2:89mc172. Same as *Clay v. Drew*, C.A. 2:91cv84.

   *Status*: Dismissed without prejudice on September 21, 1989.

6. *Albert Russell Clay, Jr. v. Virginia State Bar, et al.*, C.A. 2:89mc225. Clay alleges that the Bar Association failed to act on his complaints regarding the adequacy of his legal representation at his sentencing in Virginia Beach Circuit Court.

   *Status*: Voluntarily dismissed without prejudice.

7. *Albert Russell Clay, Jr. v. Virginia Department of Corrections*, C.A. 2:89cv895. Clay alleges that a false psychiatric report was placed in his prison files as part of a conspiracy to prolong his incarceration.

   *Status*: Dismissed without prejudice on July 24, 1990.

8. *Clay v. Spain*, C.A. 2:90mc228. Clay sued Judge Spain, Judge Russo, Yates, Ray, Brydges, Drescher, Gordon, Wells, LaPorta, Colley, Patricia Clay, Cox, Exum, Cardin, Cave and an unnamed magistrate judge, raising the same issues as alleged in *Clay v. Yates*, C.A. 2:91cv741.

*Status*: Dismissed without prejudice on April 3, 1990.

II. *Petitions for Writs of Habeas Corpus*:

1. *Albert Russell Clay, Jr. v. Edward W. Murray, Director, et al.*, C.A. 2:90cv1123. Petition for a writ of habeas corpus attacking Clay's conviction in Virginia Beach Circuit Court. Clay alleges: (1) an involuntary guilty plea; (2) ineffective assistance of counsel; (3) a coerced confession; (4) prejudicial publicity; (5) selective prosecution; and (6) due process violations.

*Status*: Case was dismissed by District Court on grounds of procedural default, but was remanded by the Fourth Circuit Court of Appeals on May 19, 1992.

2. *Albert Russell Clay v. Edward W. Murray, Director, et al.*, C.A. 2:90cv1600. Petition for a writ of habeas corpus attacking Clay's conviction in Chesapeake Circuit Court. In addition to the claims raised in C.A. 2:90cv1123, Clay alleges: (1) that the government knowingly used false statements at his sentencing; (2) that he was denied compulsory process at his sentencing; (3) that his double jeopardy rights were violated; (4) that he was unconstitutionally indicted; and (5) that he failed to receive good time credits.

*Status*: The Fourth Circuit Court of Appeals affirmed dismissal of all of Clay's claims except the last one. A Report and Recommendation has been prepared by the Magistrate Judge.

3. *Albert Russell Clay, Jr. v. Edward W. Murray, Director, etc.*, C.A. 2:92cv230. Petition for writ of habeas corpus attacking Clay's conviction in the Virginia Beach Circuit Court. Clay raises the same issues as presented in cases 2:90cv1123, 2:90cv1600, and 2:91cv741.

*Status*: On appeal to the Fourth Circuit Court of Appeals after dismissal of all claims.

4. *Albert Russell Clay, Jr. v. B.R. Overman, Sheriff, etc.*, C.A. 2:89cv52. Petition for a writ of habeas corpus attacking Clay's conviction in Virginia Beach Circuit Court. Clay raises grounds identical to those later raised in C.A. 2:90cv1123.

*Status*: Petition dismissed for failure to exhaust state court remedies on January 31, 1989. This decision was affirmed by the Fourth Circuit Court of Appeals on February 6, 1990, and the file is now closed.

5. *Albert Russell Clay, Jr. v. Bill R. Overman, Sheriff, City of Virginia Beach*, C.A. 2:89cv232. Petition for a writ of habeas corpus attacking Clay's conviction in Chesapeake Circuit Court. Clay raises grounds identical to C.A. 2:89cv52.

*Status*: Petition dismissed for failure to exhaust state remedies on April 20, 1989. The Fourth Circuit Court of Appeals dismissed Clay's appeal on March 1, 1990. File now closed.

6. *Albert Russell Clay, Jr. v. Edward W. Murray, Director, etc.*, C.A. 2:90cv219. Petition for writ of habeas corpus attacking Clay's conviction in Chesapeake Circuit Court, on the same grounds alleged in C.A. 2:89cv232.

*Status*: Voluntarily dismissed on April 3, 1990.

7. *Albert Russell Clay v. Wade D. Blankenship, Warden*, C.A. 2:90cv1674. Petition for writ of habeas corpus and testificandum.

*Status*: Denied on September 26, 1990, and no appeal noted.